# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**PAUL J. SMITH,**

    **Plaintiff,**

  v.

**COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**

Case No. 2:16-cv-1010

Judge George C. Smith
Magistrate Judge Vascura

## REPORT AND RECOMMENDATION

Plaintiff, Paul J. Smith, brings this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his applications for social security disability insurance benefits and supplemental security income. This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 21), the Commissioner's Memorandum in Opposition (ECF No. 24), and the administrative record (ECF Nos. 12-14). For the reasons that follow, it is **RECOMMENDED** that the Court **REVERSE** the Commissioner of Social Security's nondisability finding and **REMAND** this case to the Commissioner and the administrative law judge under Sentence Four of § 405(g).

## I. BACKGROUND

Plaintiff filed his application for a period of disability and disability insurance benefits, as well as a Title XVI application for supplemental security income, on May 14, 2013. He alleged

disability beginning on December 14, 2011, primarily due to impairment of his left shoulder. The Social Security Administration initially denied his application and again upon reconsideration. Plaintiff requested a *de novo* hearing before an administrative law judge.

Administrative Law Judge John L. Shailer (the "ALJ") held a hearing on June 16, 2015, at which Plaintiff, represented by counsel, appeared and testified. (R. at 728-46). Medical Expert Dr. Ronald E. Kendrick, M.D. ("ME"), and Vocational Expert Hermona C. Robinson ("VE"), also appeared and testified. (*Id*.) Plaintiff testified that he had problems with both shoulders and that his left shoulder was worse. He indicated that he was left-handed. When asked how much he could pick up and carry with both hands, Plaintiff responded "Probably around 30 pounds, maybe, as long as it's a short distance," but that he could not pick that weight up repeatedly. (R. at 735.) He estimated that he could "probably . . . try" lifting 10 pounds repeatedly. (*Id*.) When the ALJ pointed out that 10 pounds is a little more than a gallon of milk, Plaintiff responded "That's a little heavy." (*Id*.)

The ME opined that Plaintiff retained the capacity to work "around light level" with no reaching overhead and limited to frequent reaching otherwise. When Plaintiff's counsel pointed out that state-agency reviewing physician Dr. Bowles had opined that Plaintiff retained the capacity for only occasional reaching with his left upper extremity, the ME responded, "[Plaintiff] was discharged from Dr. Kovack in 13f, 4, November 2012, he basically had full range of motion of his left shoulder with occasional pain. I don't see how that translates into those restrictions." (R. at 739-740.)

The VE testified that a hypothetical individual of Plaintiff's age, education, and work experience and with the residual functional capacity ("RFC") the ALJ ultimately assessed could

2

not perform Plaintiff's past work, but could perform other full-time, competitive work such as garment sorter, with 120,000 positions in the national economy; marker, with 115,000 positions in the national economy; and packager, with 250,000 positions in the national economy. The VE further testified modification of the RFC to contain a limitation to only occasional reaching rather than frequent reaching would preclude competitive employment. (R. at 745.)

On August 14, 2015, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 29-43.) At step one of the sequential evaluation process,[1] the ALJ found that Plaintiff had not engaged in substantially gainful activity since his alleged onset date of December 14, 2011. The ALJ found that Plaintiff had the severe impairments of left shoulder torn rotator cuff, status post-surgery, and a right shoulder tear. The ALJ concluded that Plaintiff did not, however, have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R.

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 416.920(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1.   Is the claimant engaged in substantial gainful activity?
2.   Does the claimant suffer from one or more severe impairments?
3.   Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4.   Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5.   Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009);

Part 404, Subpart P, Appendix 1. At step four of the sequential process, the ALJ set forth Plaintiff's RFC as follows:

> [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). Specifically, he can lift ten pounds frequently and 20 pounds occasionally. However, he is further limited in that he cannot do overhead reaching with his bilateral upper extremities, but he can frequently reach in all other directs.

(R. at 32.)

In reaching this RFC, the ALJ accorded "great weight" to the opinion of Medical Expert Dr. Kendrick, reasoning that "[t]he medical evidence supports the residual functional capacity . . . ." and specifically citing the February 2013 functional capacity evaluation prepared by Ms. Brailer and also the February opinion of Dr. Altic, which was premised upon the results of Ms. Brailer's evaluation. (R. at 38.) The ALJ noted that Ms. Brailer had opined that Plaintiff was limited to reaching with his left arm on a frequent basis below his shoulder level and an occasional basis overhead.

The ALJ assigned "little weight" to state-agency consultative examiner Dr. Nancy Renneker, M.D.'s opinion "because it is inconsistent with the opinions of the State Agency reviewing physicians, who found initially that [Plaintiff] was capable of medium work with occasional reaching with the left upper extremity" and who later, upon reconsideration, "found that he was limited to light work with no overhead reaching and with occasional reaching with the left upper extremity." (R. at 39.) The ALJ also reasoned that Dr. Renneker's opinion was not supported by her own evaluation, citing to an earlier November 2012 evaluation in which Dr. Renneker opined that Plaintiff had an 18% left upper extremity impairment based upon the 5th

4

Edition of the AMA Guides to the Evaluation of Permanent Impairment.[2] (R. at 40 (citing Renneker Nov. 2012 IME, R. at 629)).) As relevant here, Dr. Renneker opined in April 2014 that Plaintiff could not engage in repetitive use of either arm for any task. (R. at 626.)

The ALJ likewise assigned "little weight" to treating physician Dr. David Brill, M.D.'s 2013 physical capacity evaluation in which he opined that was limited to only occasional reaching. (R. at 40.) The ALJ pointed out that Dr. Brill referenced the functional capacity evaluation Ms. Brailer performed, but that Ms. Brailer's evaluation was inconsistent with the more severe limitations Dr. Brill opined. The ALJ likewise rejected Dr. Brill's June 2014 opinion that Plaintiff had the functional limitations Dr. Renneker opined, referencing his assessment of Dr. Renneker's opinions. (R. at 39.)

Finally, the ALJ "accorded great weight" to the opinions of state-agency reviewing physicians Drs. Diane Manos, M.D., and William Bolz, M.D. (R. at 39-40.) The ALJ reasoned that "these assessments are consistent with, and are well-supported by, the objective medical evidence, and these opinions are accepted as an accurate representation of [Plaintiff's] status . . . ." (*Id.*) Both Drs. Manos and Bolz opined in their respective July 2013 and October 2013 initial and reconsideration opinions that Plaintiff was restricted to only occasional reaching with his left upper extremity. (R. at 89; 128.) The ALJ noted that Drs. Manos and Bolz had opined a left upper-extremity reaching limitation greater than he found and addressed this as follows: "[Plaintiff] testified that he could pick up 30 pounds occasionally. This suggests much greater ability than the state agency opinion supports." (R. at 40.)

Relying on the VE's testimony, the ALJ concluded that Plaintiff could perform jobs that

---

[2] Review of the referenced November 2012 IME reveals that Dr. Renneker had opined a 22% left extremity impairment, not an 18% impairment.

exist in significant numbers in the national economy. He therefore concluded that Plaintiff was not disabled under the Social Security Act during the relevant period.

On October 13, 2015, the Appeals Council denied Plaintiff's request for review without substantive comment and adopted the ALJ's decision as the Commissioner's final decision. (R. 1-6). Plaintiff then timely commenced the instant action.

In his Statement of Errors (ECF No. 21), Plaintiff challenges the ALJ's consideration and weighing of the opinions of Drs. Renneker and Bolz.[3] Plaintiff maintains that the bases the ALJ offered for rejecting Dr. Renneker's opinion lack substantial evidence. Plaintiff similarly contends that the ALJ failed to offer a good reason for rejecting Dr. Bolz's opined reaching limitation. Plaintiff submits that these errors are not harmless in light of the VE's testimony that a modification of the RFC to contain a limitation to only occasional reaching rather than frequent reaching would preclude competitive employment.

In her Memorandum in Opposition (ECF No. 24), the Commissioner argues that the ALJ correctly pointed out that Dr. Renneker had not found 100% impairment and that her opinions were inconsistent with the state-agency reviewing physicians' opinions. The Commissioner emphasizes that the ALJ has the responsibility to determine a claimant's RFC and that the ALJ's

---

[3] Plaintiff also challenges the ALJ's consideration of Dr. Brill's opinion, but fails to develop this argument beyond submitting that the ALJ's erroneous consideration of Dr. Renneker's opinion is compounded given that Dr. Brill agreed with Dr. Renneker's findings. Thus, the undersigned need not address this contention of error. *See McPherson v. Kelsey*, 125 F.3d 989, 996-96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." (internal quotation marks and citations omitted)); *Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 490-91 (6th Cir. 2006) ("This challenge warrants little discussion, as Hollon has made little effort to develop this argument in her brief on appeal, or to identify any specific aspects of the Commissioner's determination that lack support in the record.").

decision must be upheld where substantial evidence both contradicts and supports the decision. She concludes that because substantial evidence supports the ALJ's decision, this Court should affirm the decision. The Commissioner neglects to address Plaintiff's arguments with respect to the ALJ's consideration of Dr. Bolz's opinion.

## II. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)) *cert. denied sub nom. Paper, Allied-Indus., Chem.& Energy Workers Int'l Union v. TNS, Inc.*, 537 U.S. 1106 (2003). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v.*

*Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

## III. ANALYSIS

The undersigned concludes that the errors the ALJ committed within is consideration of the opinions of Drs. Renneker and Bolz deprives his RFC formulation and ultimate nondisability finding of substantial evidence.

To begin, neither of the reasons the ALJ offered for rejecting Dr. Renneker's April 2014 opinion constitute good reasons. The ALJ first erred in concluding that Dr. Renneker's April 2014 opinion was not supported by her own evaluation. As discussed above, to support this assertion, the ALJ cites to an earlier, 2012 evaluation in which Dr. Renneker assessed the percentage of impairment in accordance with 5th Edition of the AMA Guides to the Evaluation of Permanent Impairment. Although the November 2012 IME reveals that Dr. Renneker opined a 22% left extremity impairment, (R. at 629), rather than the "18% impaired and 82% not impaired," (R. at 39), the ALJ stated, the ALJ's misstatement of 18% rather than 22% is inconsequential.

The problem is that the ALJ construed Dr. Renneker's 2012 assessment to support the conclusion Plaintiff was not impaired 82% of the time. (*See id*. ("This supports a finding that [Plaintiff can lift 'frequently'").) The terms "occasional" and "frequent" are terms of art in Social Security law. "Occasional" means occurring from very little up to 1/3 of the time. Social Security Ruling (SSR) 83-10, 1983 WL 31251. "Frequent" means occurring from 1/3 to 2/3 of the time. *Id*. Based upon his statements, it appears the ALJ equated the percentage of non-impairment with the percentage of time that Plaintiff could use his extremity. Contrary to the ALJ's apparent contention, however, Dr. Renneker's conclusion in 2012 that Plaintiff's left arm

8

was only 22% impaired does not support the conclusion that he could lift or laterally reach up to 66% of the time or frequently as the ALJ ultimately determined. Rather, Dr. Renneker arrived at this assessment as required by the Ohio Bureau of Workers Compensation using 5th Edition of the AMA Guides to the Evaluation of Permanent Impairment. As Plaintiff points out, the AMA impairment percentages fail to reveal whether a particular work-related limitation is appropriate. *See Begley v. Sullivan*, No. 89-6241, 909 F.2d 1482, 1990 WL 113557, at *2 n.1 (6th Cir. Aug. 8, 1990) (unpublished table decision), states that "the AMA impairment ratings are not correlated in any way with the social security disability program," and such evidence is not "outcome determinative."; *see also Herold v. Comm'r of Soc. Sec.*, No. 1:11-cv-758, 2012 WL 441036, at *5 (S.D. Ohio Feb. 10, 2012) (reversing where ALJ committed a number of errors in assessing physician's opinion, including reliance upon another physician's AMA impairment rating to conclude that the claimant was only minimally impaired).

The only other reason the ALJ offered for rejecting Dr. Renneker's April 2014 opinion was that "it [was] inconsistent with the opinions of the State Agency reviewing physicians." (R. at 39.) Inconsistency alone, however, is not a basis to reject the opinion of an examining source over that of a non-examining source. *See* 20 CFR § 416.927(c) ("Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you.").

Although the ALJ rejected Dr. Renneker's opinion in part based upon its inconsistency the opinions of state-agency reviewing physicians Drs. Manos and Bolz, which he had accorded "great weight," he rejected Drs. Manos and Bolz's finding that Plaintiff required a left-arm limitation to only occasional reaching. The ALJ based his rejection of this limitation upon

9

Plaintiff's hearing testimony that he could lift "[p]robably around 30 pounds." (R. at 40, 735.) Plaintiff's testimony that he could lift "[p]robably around 30 pounds as long as it's a short distance," with the further qualification that he could not do so repeatedly, (R. at 735), does not constitute a good reason for concluding that Plaintiff does not require a completely distinct reaching limitation. Put another way, lifting and reaching are different functions, and how much an individual can lift at one time does reveal what percentage of the day an individual is able to reach. Indeed, nearly every medical source who offered an opinion on Plaintiff's functional capacity provided separate assessments of his ability to reach and his ability to lift. And as is relevant here, many sources considered separately Plaintiff's capacity to reach overhead and his capacity to reach laterally.

In sum, the undersigned agrees that the ALJ erred in his consideration and weighing of the opinions of Drs. Renneker and Bolz. The undersigned further concludes that these errors were not harmless. The VE testified that modification of the RFC to contain a limitation to only occasional reaching rather than frequent reaching would preclude competitive employment. (R. at 745.) Dr. Bolz concluded that Plaintiff was limited to only occasional reaching, and Dr. Renneker concluded that he was unable to repetitively use either arm for any task and unable to push or pull with either arm. Moreover, this is not a situation where the opinions at issue are so "patently deficient that the Commissioner could not possibly credit" them, *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004). To the contrary, review of Dr. Renneker's 2014 IME opinion reveals that she premised her opinion upon her interview with Plaintiff, an examination she conducted, and her review of his medical records, including MRI evidence, physical therapy notes, her prior report, and treatment notes and reports from Drs. Seni, Kovack,

Altic, and Weiss. (R. at 623-633.) Turning to DR. Bolz's opinion, the ALJ concluded that it was "consistent with, and . . . well-supported by the objective medical evidence." (R. at 39-40.) In addition, like Drs. Renneker and Bolz, Drs. Manos and Brill also opined that Plaintiff had greater functional limitations than the ALJ assessed.

The Commissioner's arguments to the contrary fail to persuade. The Commissioner correctly points out that the ALJ has the responsibility to determine a claimant's RFC and that the ALJ's decision must be upheld where substantial evidence both contradicts and supports the decision. The Commissioner may also be correct that the record in this case supplies substantial evidence both supporting and contradicting the ALJ's RFC determination and consequent nondisability finding. But even if the record contains substantial evidence supporting the ALJ's RFC assessment, the undersigned is unable to discern how the errors outlined above may have influenced the ALJ's RFC calculation. The undersigned is therefore convinced that the ALJ's errors in analyzing the record evidence may not have been harmless and that this matter should be remanded for further consideration. *See Glenn v. Comm'r of Soc. Sec.*, 763 F.3d 494, 499-500 (6th Cir. 2014) (errors in the ALJ's characterization of evidence on which non-disability finding is based warrant remand).

For these reasons, it is **RECOMMENDED** that Plaintiff's contentions of error be **SUSTAINED**.

## IV. DISPOSITION

Due to the errors outlined above, Plaintiff is entitled to an order remanding this case to the Social Security Administration pursuant to Sentence Four of 42 U.S.C. § 405(g). Accordingly, the undersigned **RECOMMENDS** that the Court **REVERSE** the Commissioner of

Social Security's non-disability finding and **REMAND** this case to the Commissioner and the ALJ under Sentence Four of § 405(g) for further consideration consistent with this Report and Recommendation.

## V. PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation). Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE